RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 23a0014p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

POLINA MILMAN,

                             *Plaintiff-Appellant*,

v.

FIEGER & FIEGER, P.C., dba Fieger, Fieger, Kenney & Harrington, P.C.; GEOFFREY NELS FIEGER,

                             *Defendants-Appellees*.

> No. 21-2685

───────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:20-cv-12154—Stephen J. Murphy, III, District Judge.

Argued: May 4, 2022

Decided and Filed: January 25, 2023

Before: KETHLEDGE, STRANCH, and NALBANDIAN, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Molly Savage, DEBORAH GORDON LAW, Bloomfield Hills, Michigan, for Appellant. Robert G. Kamenec, FIEGER, FIEGER, KENNEY & HARRINGTON, P.C., Southfield, Michigan, for Appellees. **ON BRIEF:** Molly Savage, Deborah L. Gordon, Elizabeth Marzotto Taylor, Sarah Gordon Thomas, DEBORAH GORDON LAW, Bloomfield Hills, Michigan, for Appellant. Robert G. Kamenec, FIEGER, FIEGER, KENNEY & HARRINGTON, P.C., Southfield, Michigan, for Appellees.

      STRANCH, J., delivered the opinion of the court in which KETHLEDGE and NALBANDIAN, JJ., joined. NALBANDIAN, J. (pp. 18–23), delivered a separate concurring opinion.

—————————

**OPINION**

—————————

JANE B. STRANCH, Circuit Judge.  In March 2020, Fieger & Fieger, P.C., terminated Polina Milman immediately after she made a request for unpaid leave to care for her two-year old son—a child with a history of respiratory illness that was experiencing symptoms resembling COVID-19.  Milman sued Fieger & Fieger, P.C., and its owner, Geoffrey Fieger (collectively, the Firm), alleging that her termination violated the Family and Medical Leave Act (FMLA). The district court dismissed Milman's FMLA claim, concluding that because she was not entitled to the leave she sought, she could not state a plausible claim.  For the reasons that follow, we **REVERSE** and **REMAND** for further proceedings.

## I.  BACKGROUND

### A.  Factual Background

Because this case is addressed at the motion to dismiss stage, the following allegations as set out in the First Amended Complaint[1] are taken as true and construed in the light most favorable to Milman.  *See Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, 830 F.3d 376, 382–83 (6th Cir. 2016).

In May 2018, Milman was hired as an attorney at Fieger & Fieger, P.C., a Michigan law firm.  As an employee, she was annually entitled to two weeks of paid vacation, three personal days of paid time off (PTO), and two sick days.  By early March 2020, Milman had used five days of vacation time and two sick days of her 2020 time off.

On Friday, March 13, 2020, President Trump declared a state of emergency as a result of the rampant spread of COVID-19—a highly infectious respiratory illness.  All schools and daycare facilities immediately closed and would remain closed due to concerns about COVID-19.  Based on the imminent emergency, the Firm requested that Milman thoroughly clean her

—————————

[1]The First Amended Complaint, the operative complaint in this appeal, is referred to as "the Complaint" herein.

desk, and "pre-assigned certain teams of employees to work from home for one day in order to provide for a test-run of those employees' capability to work remotely on office equipment." Milman's team was scheduled to work from home the following Wednesday, March 18.

Over the weekend, Milman e-mailed James Harrington, a partner at the Firm, to discuss her concerns about COVID-19 exposure, and she requested to work from home on Monday, March 16 and Tuesday, March 17. In her Saturday, March 14 e-mail, she noted her worry that her children's daycare facility had been closed due to COVID-19. The next day, Milman sent another e-mail to Harrington, stating additional concerns about her son's heightened vulnerability to contracting COVID-19 as a result of his bout with Respiratory Syncytial Virus (RSV)[2]—a dangerous respiratory infection that put him in the hospital for five days and required his continued use of a nebulizer for his breathing episodes. In response, Harrington advised her that he could not approve work-from-home requests and suggested that she make the request directly to Geoffrey Fieger, the owner of the Firm. Harrington also advised Milman that if she could not work from home, she could take PTO on those two days.

Early Monday morning, Milman called Fieger to request a remote working arrangement for that day and the next (March 16 and 17), which he denied. Milman then contacted human resources to use her PTO on those two days. By the end of the day, human resources approved Milman's use of PTO. On that same day, the federal government issued additional guidance to curtail the spread of COVID-19, discouraging unnecessary travel and gathering in groups of more than 10 people. Michigan Governor Whitmer also issued an executive order that banned gatherings of more than 50 people, limited restaurant services, and ordered entertainment and recreational venues to close.

On Tuesday, while Milman was out on PTO, Fieger sent a firmwide memo addressing the Firm's COVID-19 policies, instructing employees to "contact the firm if anyone in their family contracted COVID-19." Later that day, Marc Berlin, Milman's direct supervisor, called her to ask if she planned to return to the office on Thursday, March 19. She explained that she planned

---

[2]RSV is a serious respiratory illness that especially impacts young children, resulting in the hospitalization of an estimated 58,000 children annually. *See* RSV in Infants and Young Children, Center for Disease Control and Prevention (last updated Dec. 18, 2020), available at https://www.cdc.gov/rsv/high-risk/infants-young-children.html.

to return to the office but remained concerned about her children's day care—which was still closed due to COVID-19.  Milman's son had also developed symptoms resembling COVID-19, based on the limited knowledge of the virus at that time: a cough, runny nose, and gastrointestinal issues.

On Wednesday, Milman worked from home, as she was pre-assigned to do.  Her son's symptoms persisted and worsened throughout the day.  Berlin again contacted her to confirm whether Milman would be in the office on Thursday, March 19, to which she responded affirmatively.

On Thursday, confirmed COVID-19 cases in Michigan skyrocketed from 80 to 334.  Over the course of the morning, Milman's son's conditions did not improve, and she remained concerned about working in person in the office if he had, in fact, contracted COVID-19.  Milman contacted Human Resources, "stating that her son's symptoms were not any better and that she had major concerns about working in the office because of her son's condition," and she "offered to take unpaid leave, if necessary, to stay out of the office."  Human Resources responded without addressing Milman's request for unpaid leave and instead offered that she could work from home for the remainder of the week.  Milman accepted that offer, forwarded Human Resources' e-mail to Berlin, and worked with him as usual throughout the workday, but from home.  By the end of the day, however, Human Resources e-mailed Milman a letter, signed by Fieger, that terminated her employment with the Firm and stated:

> You failed to come in to work on Monday and Tuesday and indicated that you were taking personal time off.  You assured your supervisor . . . that you were going to come in on Thursday.  Today, Thursday, you did not come into work and indicated that your child had a minor cold . . . . Today will be your last day on our payroll.

On March 23, Milman requested her personnel file pursuant to Mich. Comp. Laws § 423.501 (1979).  The very next day, Fieger sent a second termination letter now stating that: "[Milman] made it clear by [her] activity that [she] had no intention of coming into work"; she refused to work because her "child had a cold"; and "[a]t that point, it was clear [she] had quit."

**B. Procedural History**

On August 11, Milman sued the Firm, asserting a federal claim that her discharge violated the FMLA and a state law claim of wrongful discharge in violation of public policy. She later filed an amended complaint, adding state law claims of defamation and false light.

The Firm moved to dismiss Milman's Complaint. The district court granted the motion, concluding that Milman had failed to state a claim under the FMLA and declining to exercise supplemental jurisdiction over the remaining state law claims. The court reasoned that Sixth Circuit precedent required Milman to show that "she was entitled to FMLA leave" to sustain her FMLA retaliation claim. Because Milman "failed to argue whether she was entitled to leave," and, even if she had, she did not allege facts to support that her son suffered from a "serious health condition" to create an entitlement to leave, the court found that she had not alleged a plausible FMLA retaliation claim. Milman timely appealed.

## II. ANALYSIS

We review de novo the district court's order of dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008). "We construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations as true, and examine whether the complaint contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Ohio Pub. Emps. Ret. Sys.*, 830 F.3d at 382–83 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

On appeal, Milman argues that the district court erred in concluding that she was required to prove entitlement to FMLA leave to sustain her retaliation claim, where she made a request for unpaid leave but did not actually take any leave. She argues that her initial request for unpaid leave fell within the scope of protected activity under the FMLA. The Firm contends that our precedent requires entitlement to leave in order to be engaged in protected activity under the FMLA. The scope of protected activity under the FMLA is, therefore, at the heart of this case.

## A. The Family and Medical Leave Act

Congress enacted the FMLA "to balance the demands of the workplace with the needs of families, to promote the stability and economic security of families, and to promote national interests in preserving family integrity." 29 U.S.C. § 2601(b)(1)–(5). The FMLA does so by conferring on eligible employees "two interrelated, employee substantive rights": "the . . . right to use a certain amount of leave for protected reasons, and . . . [the] right to return to . . . an equivalent job after using protected leave." *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1122 (9th Cir. 2001). "These rights are essentially prescriptive, 'set[ting] substantive floors' for conduct by employers, and creating 'entitlements' for employees." *See Hodgens v. Gen. Dynamics Corp.*, 114 F.3d 151, 159 (1st Cir. 1998) (quoting *Diaz v. Fort Wayne Foundry Corp.*, 131 F.3d 711, 712–13 (7th Cir. 1997)).

In enacting the FMLA, Congress carefully implemented employees' right to unpaid leave "in a manner that accommodates the legitimate interests of employers." 29 U.S.C. § 2601(b)(3). To that end, the FMLA limits *who* is eligible for FMLA leave: only those employees who worked for a covered employer for at least 12 months and have accumulated at least 1,250 hours of service with that employer in the previous 12 months. *Id.* § 2611(2)(A). And the Act specifies *when* those eligible can exhaust their right to leave: in circumstances that qualify for FMLA leave, including, for example, a serious health condition that makes the employee unable to perform his or her job, or the need to care for a spouse, child, or parent with a serious health condition. *See id.* § 2612(a)(1)(C); *see also* § 2612(a)(1)(A)–(F).

Keeping the balance between protecting employees' right to leave and employers' legitimate interests in mind, the FMLA also prescribes a procedural framework to govern *how* employees may access their statutory entitlements. The framework contemplates an interactive dialogue between the employee and the employer, starting with an employee's formal request for leave, usually 30 days before the leave is to begin, but in any case, as soon as "practicable." *See id.* § 2612(e). Following an employee's initial notice to the employer, employers may request medical certification issued by the healthcare provider of the employee to establish that leave is actually necessary. *See id.* § 2613(a). Employers may also request a second or even third

medical opinion from different healthcare providers, including one chosen by the employer, if there are questions about an employee's entitlement to leave. *Id.* § 2613(c)(1).

### B. FMLA Protections of Employee Rights

In addition to the grant of substantive rights described earlier, the FMLA enumerates prohibited acts. 29 U.S.C. § 2615(a). First, "Congress made it unlawful for an employer to 'interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided' by the Act." *Bachelder*, 259 F.3d at 1122 (quoting 29 U.S.C. § 2615(a)(1)). Second, Congress made it unlawful for employers to "discriminat[e] against any individual for opposing any practice made unlawful" by the Act. 29 U.S.C. § 2615(a)(2).

Milman's Complaint alleges a retaliation claim under the FMLA without reference to a precise statutory subsection. The district court cabined Milman's claim to § 2615(a)(2), reasoning that our caselaw designates § 2615(a)(2) as the sole basis for retaliation claims. Milman notes that the distinction between the two prongs of § 2615(a) has proven to be an unfortunate source of confusion in our circuit and others, and raises the question of whether the district court properly designated § 2615(a)(2) as the statutory basis for her claim. *See Phillips v. Mathews*, 547 F.3d 905, 913–15 (8th Cir. 2008) (Colloton, J., concurring). At oral argument, the Firm conceded that "this is an [§ 2615](a)(1) case," acknowledging that the claim more naturally falls within the text of that provision. Recording of Oral Arg. at 33:12–33:55.

In the two subsections of § 2615(a), the FMLA recognizes two types of claims. The first, known as an entitlement or interference claim, arises when an employee is wrongfully denied a substantive entitlement—for example, the employee is denied leave to which she is entitled. *See Hoge v. Honda of Am. Mfg.*, 384 F.3d 238, 244 (6th Cir. 2004). In this type of claim, "the plaintiff need not show that he was treated worse than other employees, just that he was denied an entitlement under the Act." *Id.* The second type of claim, generally known as a retaliation or discrimination claim, arises when an employer takes an adverse employment action against the employee for exercising or attempting to exercise a right protected by the FMLA. *See Bryant v. Dollar Gen. Corp.*, 538 F.3d 394, 400–02 (6th Cir. 2008).

The confusion arises over the statutory subsection for retaliation claims. Some panels of our court and other circuits have identified § 2615(a)(2) as the statutory basis for retaliation claims, and have limited § 2615(a)(1) to entitlement claims only. *See id.* at 400; *see also Lovland v. Emp'rs Mut. Cas. Co.*, 674 F.3d 806, 810–11 (8th Cir. 2012) (applying the same dichotomy); *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006) (same). In *Bryant*, we explained that the structure of the FMLA and legislative history "strongly support interpreting § 2615(a)(2) as prohibiting retaliation against employees" who engage in protected activity. *Bryant*, 538 F.3d at 401–02. Thus, *Bryant* suggests that § 2615(a)(2) provides the statutory basis for Milman's retaliation claim.

But, as we and other circuits have recognized, a retaliation claim may also be cognizable under § 2615(a)(1). *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 446–47 (6th Cir. 2007); *Smith v. City of Niles*, 505 F. App'x 482, 486 (6th Cir. 2012) (citing *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 315 (6th Cir. 2001)); *see also Woods v. START Treatment & Recovery Ctrs., Inc.*, 864 F.3d 158, 167 (2d Cir. 2017). Section 2615(a)(1) makes it unlawful for an employer "to interfere with, restrain, or deny" the exercise or attempted exercise of any right protected under the FMLA. Logically, an adverse employment action in response to the exercise of (or the attempt to exercise) a statutory right—retaliation for engaging in protected activity—is a form of interference or restraint on the ability to exercise that statutory right. Constraining § 2615(a)(1) to wrongful denials of FMLA entitlements only and making § 2615(a)(2) the only avenue for recourse against adverse employment action would ignore the plain text of § 2615(a)(1). As the Second Circuit recognized, an "adverse employment action in the face of a lawful exercise of FMLA rights fits comfortably within § 2615(a)(1)'s 'interfere with, restrain, or deny' language." *Woods*, 864 F.3d at 167. Under this statutory language, it makes little sense to cabin solely to § 2615(a)(2) retaliation claims that are based on the exercise or attempt to exercise FMLA rights. Termination of an employee for exercising or attempting to exercise rights under the FMLA falls squarely within the plain language of § 2615(a)(1) too, as the Firm concedes here.

In the context of the statutory provisions of the FMLA, the distinction between § 2615(a)(1) and § 2615(a)(2) is of no practical consequence, as the First Circuit explained:

> The distinction would matter if the standards of proof used turned on which statutory section were pled . . . Yet, whether a claim is characterized as 'interference' or not, its elements actually differ depending on whether the plaintiff is, at bottom, claiming that the employer denied his or her substantive rights under the FMLA or that the employer retaliated against him or her for having exercised or attempted to exercise those rights.

*Colburn v. Parker Hannifin*, 429 F.3d 325, 331–32 (1st Cir. 2005). Thus, this case leaves undisturbed our past precedent that has analyzed retaliation claims under § 2615(a)(2).

Turning to this case, Milman's core claim is that she was fired for inquiring about and making a request to take FMLA leave, which she argues is protected activity under the FMLA. As explained above, the issue is clearly cognizable under both prongs of § 2615(a).

To state a claim for retaliation for exercising (or attempting to exercise) FMLA rights, Milman must establish that: (1) she was engaged in protected activity; (2) her employer knew she was engaged in the protected activity; (3) her employer took an adverse employment action against her; and (4) there was a causal connection between the protected activity and the adverse employment action. *See Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012) (citation omitted). Here, only the first two elements are at issue. The remaining elements of Milman's retaliation claim—that her termination constituted an adverse employment action, and that there was a causal connection between the protected activity—are not in dispute here and were not disputed before the district court. On the facts alleged, the key question is whether Milman's request for leave, regardless of whether she was entitled to the requested leave, is a protected right under the FMLA.

**C. Scope of Protected Activity Under the FMLA**

In assessing whether Milman's conduct fell within the scope of protected activity under the FMLA, the district court largely relied on *Branham v. Gannet Satellite Info. Network, Inc.*, 619 F.3d 563, 568 (6th Cir. 2010), in holding that our precedent requires entitlement to FMLA leave. Because Milman did not allege entitlement to the leave she requested, the court determined that she had not engaged in protected activity under the FMLA and her retaliation claim failed. Milman contends that the district court erred by relying exclusively on *Branham*,

that the *Branham* statement on which the court relied was non-binding dicta, and that the case is distinguishable.

It makes sense that entitlement is a prerequisite to an FMLA retaliation claim in certain circumstances. In the more common circumstance, if an employee actually takes leave without being entitled to the leave, her action is beyond the scope of FMLA protection. Simply put, the FMLA protects leave that is taken only if it falls within the scope of entitlement; taking leave to which the employee was not entitled unambiguously falls outside the FMLA's protections. That was largely the issue in *Branham*. *See id.* at 567, 571–73. There, the plaintiff was terminated for excessive absenteeism after she had taken multiple, extended leaves and then put her employer on notice that she intended to take additional unpaid leave. *Id.* at 565–67. Because the plaintiff took leave and the employer terminated her for being absent pursuant to that leave, the claim in *Branham* hinged on whether the leave plaintiff took was actually protected. *Id.* at 568. Finding disputes of material fact as to the entitlement issue, we reversed the district court's grant of summary judgment, and remanded the case for trial. *Id.* at 574. The other cases in this circuit, cited by the Firm and the district court, grappled with that same fact pattern—where employees took leave to which they were ultimately not entitled—and so, unsurprisingly, those cases also hinged on entitlement to leave. *See, e.g.*, *Morris v. Family Dollar Stores of Ohio, Inc.*, 320 F. App'x 330, 337–38 (6th Cir. 2009) (concluding that because plaintiff was not entitled to the leave he took, he was not engaged in protected activity); *Katoula v. Detroit Ent., LLC*, 557 F. App'x 496, 498–99 (6th Cir. 2014) (same); *Palmer v. Cacioppo*, 429 F. App'x 491, 496–97 (6th Cir. 2011) (same); *Nawrocki v. United Methodist Ret. Cmtys. Inc.*, 174 F. App'x 334, 339 (6th Cir. 2006) (same).

This case presents an entirely different circumstance. Milman never actually took leave; she only made a request for leave. Faced with similar arguments and similar precedent requiring entitlement, then-Tenth Circuit Judge Gorsuch recognized the same distinction, concluding that the question was "open and contestable." *See Wilkins v. Packerware Corp.*, 260 F. App'x 98, 103 (10th Cir. 2008). Then-Judge Gorsuch provided an explanatory hypothetical: "[i]f . . . an employee took time off to care for an ailing spouse, . . . only to discover that the spouse had been misdiagnosed and did not suffer from a serious health condition, it would arguably serve to

defeat the purpose of the statute to allow the employer to fire the employee on the basis of a doctor's misdiagnosis." *Id.* This case does not involve a plaintiff who *took* the leave requested, as in *Branham*; instead, the question is whether the FMLA protects the right of an employee to inquire about and request leave even if it turns out that she is not entitled to such leave. For an answer, we first look to the plain language of the statute.

The FMLA's language, as explained earlier, *requires* employees to put their employers on notice of their desire to use their unpaid leave by making a formal request to the employer. 29 U.S.C. § 2612(e). This is the first step in the process contemplated by the FMLA's procedural framework. *See supra* pp. 6–7 (discussing procedural framework of FMLA); s*ee also* 29 U.S.C. § 2601(b)(3) (specifying that the FMLA is designed "in a manner that accommodates the legitimate interests of employers"). Because this process facilitates both employees' access to their statutory right to take unpaid leave *and* employers' ability to assess the validity of an FMLA request, the entirety of the process must be harmonized with the statute's provisions entitling employees to leave. *See FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (instructing courts to interpret statutes in a manner that "fit[s], if possible, all parts into an harmonious whole" (quoting *FTC v. Mandel Brothers, Inc.*, 359 U.S. 385, 389 (1959))). To do so here, the steps of the process created by the FMLA—including the first step, *i.e.*, the employee's initial request for leave—must be protected activity under the Act. FMLA rights and the statute's purpose would be significantly diminished if employers could fire an employee who simply took the required initial steps to access FMLA leave.

This understanding comports with the broader statutory scheme. *See Brown & Williamson Tobacco Corp.*, 529 U.S. at 133. There is no basis for imagining that Congress created a statutory scheme that puts the onus on employees to know preemptively whether their leave requests would fall within the scope of statutory entitlement—an aspect of the FMLA that is hardly a model of clarity, *see, e.g.*, *Morris*, 320 F. App'x at 336–38 (grappling with definition of "serious health condition"). That view would, as the First Circuit put it, create an "'ask at your peril' approach [that] could deter employees, including eligible employees uncertain of the extent of their rights, from taking the first step necessary to exercise their rights." *McArdle v. Town of Dracut/Dracut Pub. Sch.*, 732 F.3d 29, 36 (1st Cir. 2013). Under that interpretation, the

statutory structure itself would chill employees' willingness to exercise their rights under the FMLA. And chilling an employee's ability to exercise her statutory rights goes to the very heart of conduct that § 2615(a)(1) seeks to redress. *See, e.g.*, *Bachelder*, 259 F.3d at 1124 ("Employees are, understandably, less likely to exercise their FMLA leave rights if they can expect to be fired or otherwise disciplined for doing so.").

Suppose that an employee, intending to exercise her FMLA rights, meets with her employer and asks questions concerning her FMLA rights, then is fired for doing so. Concluding that no FMLA violation could occur if it turns out that the employee is not entitled to leave would render the employee unprotected during the step required to initiate the FMLA's process. Without protection, employees would be discouraged from taking authorized initial steps—including preparing or formulating a request—to access FMLA benefits. We are not to impose nonsensical readings of a statute "if alternative interpretations consistent with the legislative purpose are available." *Donovan v. FirstCredit, Inc.*, 983 F.3d 246, 254 (6th Cir. 2020) (quoting *Guzman v. U.S. Dep't of Homeland Sec.*, 679 F.3d 425, 432 (6th Cir. 2012)). Accordingly, for the Act to protect the "exercise or attempt to exercise" FMLA rights, the procedural framework the statute established—including its first step—must fall within the scope of protected activity, without regard to ultimate entitlement.

In alignment with these points, other circuits have treated an employee's notice of need—regardless of whether the employee was ultimately entitled to the leave—as protected conduct.[3] The Eighth Circuit in *Wierman v. Casey's General Stores* reasoned that "[i]n order to benefit from the protections of the statute, an employee must provide [her] employer with enough information to show that [she] *may need FMLA leave*." 638 F.3d 984, 1000 (8th Cir. 2011) (emphasis added) (quoting *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005)). In rejecting the argument that an employee's termination *before* FMLA certification means that she never exercised her FMLA leave, the Eighth Circuit treated the employee's *notice of need* as

---

[3]We, too, have recently explained that "[e]mployers are charged with knowing about FMLA protected activity as soon as an employee requests leave, even if it turns out the employee was not entitled to benefits. It is the *request* that is protected activity." *Render v. FCA US, LLC*, 53 F4th 905, 920 (6th Cir. 2022) (emphasis in original) (also noting that employer knew employee was "engaging in protected activity" when he first applied for FMLA leave).

protected conduct or an exercise of FMLA rights. *See id.* The employer's duties arose, and it was not allowed to use its termination of the employee before the deadline for submission of FMLA paperwork to argue that the employee never exercised her FMLA rights. *Id.* The First Circuit made a similar observation, noting that "[r]equesting leave is also an FMLA-protected right . . . for which retaliation conceivably could be wrongful even where the leave itself was unprotected." *Tayag v. Lahey Clinic Hosp., Inc.*, 632 F.3d 788, 793 (1st Cir. 2011).

In a related circumstance, the Seventh Circuit recently held that an employer need not formally deny a request for leave to violate the FMLA. *See Ziccarelli v. Dart*, 35 F.4th 1079, 1085–86 (7th Cir. 2022). The court explained that the FMLA broadly prohibits an employer's activity that restrains, limits, or discourages an employee's exercise or attempt to exercise FMLA rights. *Id.* That can happen even "without explicitly denying a leave request." *Id.* at 1086. "For example, an employer that implements a burdensome approval process or discourages employees from requesting FMLA leave could interfere with and restrain access without denying many requests because few requests requiring a formal decision would ever be made." *Id.* The court further posited, "an employer that wanted to prevent FMLA use would have many options that would stop short of denying a claim, such as not providing basic FMLA information to an employee unaware of his rights, or orally discouraging FMLA use before the employee actually requested leave." *Id.* These concerns led the Seventh Circuit to conclude that the broad coverage of § 2615(a)(1)'s language takes into account the fact that the FMLA protects employees from all employer actions that chill employees' ability to access their unpaid leave. *Id.* That reasoning applies with equal force to Milman's preparing or engaging in the initial steps of the processes under the FMLA's framework. Terminating her for doing so, even if she is not ultimately entitled to leave, would raise the very same concerns that convinced the Seventh Circuit that an employer's formal denial was not necessary to establish a violation under § 2615(a)(1).

Lastly, the FMLA's implementing regulations are consistent with this understanding. Starting with the regulation implementing § 2615(a), "[t]he FMLA prohibits interference with an employee's rights under the law, and with . . . *inquiries relating to an employee's rights*." 29 C.F.R. § 825.220(a) (emphasis added). Inquiries relating to entitlement to leave, like

Milman's, plainly fall within that definition. And, of course, the act of inquiring by its very nature is at odds with the conclusion that Milman must be entitled to leave.

The regulation implementing the FMLA's procedural framework similarly contemplates that some employees may make requests that raise questions of entitlement. *See* 29 C.F.R. § 825.301(c). Indeed, that provision explicitly requires that in the event of a dispute over whether leave qualifies under the FMLA, the employee and employer "should" *discuss* and attempt to resolve the matter. *Id.* It would make no sense for the regulations to contemplate such a discussion as part of the FMLA's procedural framework, if employers may simply fire any employee who turns out not to qualify.

Thus, the scope of protected activity under the FMLA starts with the first step contemplated under the Act's procedures: a request made to the employer. That request, moreover, need not lead to entitlement in order to be protected. In this case, when her son began exhibiting symptoms associated with COVID-19, Milman made a request to her employer for unpaid leave—following the first step of the FMLA's process. The Firm, through Human Resources, then offered, and Milman accepted, a work-from-home arrangement for those two days and never responded to her request. Milman's action was grounded in a legitimate exercise of the FMLA's procedural framework and was therefore protected under the FMLA.

The Firm raises concerns noted by the Eleventh Circuit in *Hurley v. Kent of Naples, Inc.*, 746 F.3d 1161, 1167 (11th Cir. 2014), that FMLA protections could conceivably "apply to every leave request." But the facts in *Hurley* have no relation to this case. There, the plaintiff sent an email request for a total of 11 weeks of *vacation* time over the course of two years. *Id.* at 1163. Hurley himself acknowledged that he intended to use that time to do "things that would help him get better" like "visiting the Grand Canyon." *Id.* at 1164. Hurley's request for unpaid FMLA leave as a subterfuge for extensive vacation time was in no way tethered to his chronic condition and thus could not potentially qualify under any subcategory of the FMLA.

By contrast, taking the circumstances alleged in the Complaint as true and construing them in the light most favorable to Milman, the Complaint's allegations make clear that when faced with a pandemic involving a novel respiratory illness (COVID-19), concurrent recognition

by federal and state executive orders, and a rising number of COVID-19 cases, Milman believed that her symptomatic two-year old son—who had a history of hospitalization for respiratory issues, including a serious case of RSV which required ongoing nebulizer use—may have contracted the illness. Faced with these facts, Milman made a request for unpaid leave to care for her son, a hallmark FMLA claim. *See* § 2612(a)(1)(C).

The district court ultimately concluded that the Complaint failed to make allegations that would allow the court to conclude her son suffered from a "serious health condition" based on the alleged symptoms. But, in March 2020, national actions indicated that COVID-19 could be a serious health condition for which Milman might seek FMLA leave. Although they did not apply to her at the time of her termination, the Emergency Family and Medical Leave Expansion Act and the Emergency Paid Sick Leave Act went into effect just days after these events transpired. The circumstances alleged show that COVID-19 was serious enough to merit the federal government's swift action, including enactment of emergency legislation to provide relief and paid leave to impacted individuals. Nothing in the Complaint can be construed as an attempt by Milman to abuse her FMLA leave or exploit her employer; rather, she alleges legitimate FMLA concerns, the need to attend to her son's health issues amid the early uncertainty of a pandemic, as the basis for the leave she sought. Those legitimate concerns are tethered to a statutory provision that would lead to entitlement. *See* § 2612(a)(1)(C). These concurrent events and the specifics of Milman's request for unpaid leave, as alleged in the Complaint, support the conclusion that her request for FMLA leave fit plausibly within the statute's framework. We conclude that Milman's request for leave was protected—even if she ultimately was not entitled to it—and that the district court erred in concluding that her request fell outside the FMLA's scope. Milman's Complaint thus sufficiently alleges facts to establish that she was engaged in protected activity.

### D. Requisite Notice

The Firm contends, in the alternative, that even if a request for FMLA leave—regardless of entitlement—could be protected activity, Milman's claim still fails because she did not provide the requisite notice for FMLA leave. It is entirely unclear whether the Firm contends that the notice deficiency deprives Milman of protection under the FMLA as a threshold matter

(going to the first element of a prima facie case for retaliation) *or* whether it argues that Milman's alleged failure to give the requisite notice causes her claim to fail under the second element of a prima facie FMLA claim—that the Firm knew she was exercising her FMLA rights. Either way, Milman plausibly alleged that she provided the requisite notice to suggest that she sought FMLA leave.

"[A]n employee does not have to expressly assert his right to take leave as a right under the FMLA" to trigger its protections. *See Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 450 (6th Cir. 1999). But the employee must provide enough information for the employer to know that the leave she has requested reasonably might fall under the FMLA. In addition, where leave is needed to care for a family member, the employee must so indicate. *See Nicholson v. Pulte Homes Corp.*, 690 F.3d 819, 826 (7th Cir. 2012) (citing 29 C.F.R. §§ 825.302(c), 825.124(a)).

"In general, if an employer lacks sufficient information about an employee's reason for taking leave, it should inquire further to ascertain whether the employee's leave was potentially FMLA-qualifying." *Nawrocki*, 174 F. App'x at 338 (citing *Cavin v. Honda of Am. Mfg.*, 346 F.3d 713, 726 (6th Cir. 2003)); *see also Nicholson*, 690 F.3d at 826 ("If [an employee] provided sufficient notice that she needed time off to care for her seriously ill parents, then [her employer] had a duty to inquire further to confirm [her] FMLA entitlement."). The implementing regulation makes this clear: "In any circumstance where the employer does not have sufficient information about the reason for an employee's use of leave, the employer should inquire further of the employee or the spokesperson to ascertain whether leave is potentially FMLA-qualifying." 29 C.F.R. § 825.301(a). Once an employer is put on notice that an employee seeks to use her FMLA leave, moreover, "the employer bears the obligation to collect any additional information necessary to make the leave comply with the requirements of the FMLA." *Hammon*, 165 F.3d at 450.

Based on the circumstances outlined in her Complaint, Milman plausibly attempted to engage in the process contemplated under the Act when she requested unpaid leave due to her son's health and the growing pandemic. The Firm indicated that it was aware of Milman's request based on its response: it offered an alternative accommodation to work from home for two days. The Firm had notice that Milman sought leave to care for her son who had recently

been hospitalized with RSV, suffered continuing symptoms from that condition and, potentially, had contracted COVID-19. This knowledge gave rise to a duty for the Firm to, at minimum, engage in the communication required by the statute. The Firm neither sought to clarify Milman's request nor did it attempt to obtain "a certification issued by a healthcare provider of . . . [her] son" to determine whether her request fell outside the scope of the Act. 29 U.S.C. § 2612(a). Instead, the Firm offered a work-from-home arrangement—which Milman accepted—and then terminated her after the first day for failing to "come into work," indicating that her "child had a minor cold." The Firm, thus, failed to exhaust any of its obligations in responding to Milman's request. On these allegations, Milman provided proper notice to her employer that she sought FMLA leave and was acting pursuant to the FMLA's prescribed procedures. The Firm was on notice of her protected activity.

Based on the analysis in the preceding sections, we conclude that Milman's Complaint "state[s] a claim to relief that is plausible on its face" with respect to her FMLA claim, and the district court erred in dismissing the case. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### E.  Remaining State Law Claims

The district court did not analyze Milman's state law claims in the first instance and declined to exercise supplemental jurisdiction. Considering our ruling that Milman's complaint states a plausible claim for relief under the FMLA, the district court may reconsider its decision to decline to exercise supplemental jurisdiction over Milman's state law claims, in its discretion, on remand. *See, e.g.*, *Sw. Williamson Cnty. Cmty. Ass'n v. Slater*, 173 F.3d 1033, 1038 (6th Cir. 1999).

### III.  CONCLUSION

We **REVERSE** and **REMAND** the case for further proceedings consistent with this opinion.

––––––––––––––––––

**CONCURRENCE**

––––––––––––––––––

NALBANDIAN, Circuit Judge, concurring.  Fieger & Fieger, P.C. terminated Polina Milman after she made a leave request under the Family and Medical Leave Act ("FMLA").  Her proposed leave, as it turns out, would not have qualified for FMLA protection.  So the district court rejected her claim.  I agree with the majority opinion, however, that Milman's request could qualify for protection as an "attempt to exercise" FMLA leave.  But I write separately because I believe that claims like hers should arise solely under 29 U.S.C. § 2615(a)(1).  I also explain what I think the limits are on "attempt" claims based on the FMLA's text and our precedent—none of which goes against the majority opinion.

I emphasize that the posture of this case matters.  Milman argues that she was fired for attempting to exercise FMLA leave.  It appears, however, that Milman may have taken some leave—at least she admits that she was not at work on the day before she was fired.  Under our precedent, someone who takes a leave that turns out not to be authorized by the FMLA has no FMLA claim.  But here, Milman alleges that she was actually fired for requesting FMLA leave, not for taking leave.  I expect that these questions, along with whether Milman provided adequate notice to Fieger & Fieger, will be resolved as the record is developed, but for now, I agree that this claim should proceed.

**I.**

Although our precedent seems to allow at least some FMLA-retaliation claims to arise under § 2615(a)(2), (a)(1) charts the proper course here.[1]  As the majority recognizes, this Court has sometimes used (a)(2) for retaliation claims and limited (a)(1) to entitlement claims.  *See Groening v. Glen Lake Cmty. Sch.*, 884 F.3d 626, 630 (6th Cir. 2018) (citing (a)(2) for an

––––––––––––––––––

[1]Section 2615(a) protects employees from interferences with their FMLA rights.  Subsection (a)(1) protects the exercise of those rights by stating "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."  § 2615(a)(1).  The second subsection, (a)(2), protects employees who oppose an unlawful FMLA practice from employer discrimination.  § 2615(a)(2).  That subsection makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."  *Id.*

FMLA-retaliation claim involving an employee who "went on leave"); *Hunter v. Valley View Loc. Sch.*, 579 F.3d 688, 690 (6th Cir. 2009) (citing (a)(2) when asserting that "[a]n employer may not discriminate or retaliate against an employee for taking FMLA leave"). For example, in *Bryant v. Dollar Gen. Corp.*, we explained that the FMLA and its legislative history "strongly support interpreting § 2615(a)(2) as prohibiting retaliation against employees who use FMLA leave." 538 F.3d 394, 401 (6th Cir. 2008).

Yet, at other times, we have used (a)(1) as a basis for FMLA-retaliation claims. *See Wysong v. Dow Chem. Co.*, 503 F.3d 441, 446–47 (6th Cir. 2007) (reasoning that (a)(1)'s "prohibition [against interfering, restraining, or denying the exercise of or attempted exercise of any FMLA right] includes retaliatory discharge for taking leave"); *Smith v. City of Niles*, 505 F. App'x 482, 486 (6th Cir. 2012) (quoting 29 C.F.R. § 825.220(c)). And at least one of our cases has stated that "a claim for retaliatory discharge is cognizable under either" (a)(1) or (a)(2). *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 282 (6th Cir. 2012).

It would behoove courts to stop using both subsections interchangeably in favor of textual precision. Importantly, when as here, an employee brings a retaliation claim and does not oppose an "unlawful FMLA practice," protection for the FMLA-leave request stems solely from § 2615(a)(1), not (a)(2). We should recognize that each subsection protects a different right. And although one could imagine a situation in which an employee could bring both claims against an employer, this case is not one of them.

An (a)(1) claim protects employees when they "exercise" or "*attempt to exercise*" their rights under the FMLA. § 2615(a)(1) (emphasis added). Section 2615(a)(1) protects "any right provided under" the FMLA. Such rights can include an entitlement to leave when an employee must take care of a new-born baby, § 2612(a)(1)(a), cannot work because of a serious health condition, § 2612(a)(1)(d), or as relevant here, takes care of a son with a serious health condition, § 2612(a)(1)(c).

On the employer side, (a)(1) prevents employer actions that "interfere with, restrain, or deny" the exercise or attempt to exercise FMLA rights. § 2615(a)(1). That includes termination. *See Woods v. START Treatment & Recovery Ctrs., Inc.*, 864 F.3d 158, 166 (2d Cir. 2017)

("[A]dverse employment action in the face of a lawful exercise of FMLA rights fits comfortably within § 2615(a)(1)'s 'interfere with, restrain, or deny' language."). Thus, by its terms, (a)(1) covers retaliation against an attempt for FMLA leave. And as such, Milman's request for leave falls under (a)(1)'s scope.

But (a)(2) is irrelevant here. That subsection protects individuals who "oppos[e] any practice made unlawful" by the FMLA. § 2615(a)(2). This opposition can include, for example, an employee's protest against unlawful FMLA conduct, such as an employer's refusal to grant leave or the like. *See Hoffman v. Pro. Med Team*, 394 F.3d 414, 415, 421 (6th Cir. 2005). But (a)(2)'s scope does not extend to employees who exercise or attempt to exercise an FMLA right. And courts should not read (a)(1)'s language as part of (a)(2). Courts cannot add protections to what (a)(2)'s text states or reasonably implies. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 93 (2012) (discussing the *casus omissus* canon of interpretation). Retaliation against an "exercise" or "attempt to exercise" FMLA rights instead falls in (a)(1)'s purview. § 2615(a)(1). And (a)(1)'s reference to these employee safeguards only relates to that subpart. *See* Scalia & Garner, *supra* at 156–60 (discussing the "scope-of-subparts" canon).

Milman's claim arises under (a)(1) only. Indeed, at oral argument, both parties acknowledged that "this is an (a)(1) case" because Milman did not oppose any practice. (Recording of Oral Argument at 33:12–33:55, 38:30–39:13.) Because courts should use (a)(1) in FMLA-retaliation claims like this one, I believe that the district court should not have designated (a)(2) as the statutory basis for Milman's claim.

## II.

Second, I write to build upon the majority's discussion of "attempt" under the FMLA. (Maj. Opinion, pp. 9–17.) My fear is that recognizing unmoored, unsuccessful "attempt" claims could lead to uncertainty and possible abuses. To clarify, the majority opinion does not embrace such unbounded claims. I simply write here separately to outline the restrictions that I see on those claims consistent with the majority's opinion. Thus, I agree that the FMLA can protect unsuccessful attempts at FMLA leave as here. As the majority states, employee action that is

"grounded in a legitimate exercise of the FMLA's *procedural framework* [is] protected under the FMLA." (*Id.* at 14 (emphasis added).) This procedural framework cabins "attempt" by its start and end: The FMLA's text and our precedent require employees to provide sufficient notice of an FMLA right and limit how long an "attempt" may extend.

### A. An Attempt's Starting Point

Two parts of the FMLA's text inform when an "attempt" at FMLA leave begins. First, and perhaps obviously, (a)(1) protects only those who "attempt to exercise" their FMLA rights. § 2615(a)(1). The subsection states that the "attempt" must seek to accomplish "any right provided under this subchapter." *Id.* By negative implication, "any right" excludes all attempts that unambiguously seek to obtain non-protected activities. *See Eaton Corp. & Subsidiaries v. Comm'r*, 47 F.4th 434, 444 (6th Cir. 2022) ("After all, under the *expressio unius* canon, '[t]he expression of one thing implies the exclusion of others.'" (quoting Scalia & Garner, *supra* at 107)). Thus, a request for vacation time would not qualify as an attempt at FMLA-protected leave. *See Hurley v. Kent of Naples, Inc.*, 726 F.3d 1161, 1164–67 (11th Cir. 2014). But practically no one would overtly seek vacation time as FMLA leave. Instead, that person would try to couch an otherwise illegitimate request in FMLA terms.

So we come to the important second consideration for a legitimate "attempt"—sufficient notice under § 2612(e). A protected FMLA request must provide sufficient "notice" of FMLA leave to an employer. *See* § 2612(e)(1) (requiring employees to provide employers "30 days' notice" to take FMLA-qualifying "leave" or notice as soon as "practicable" if the employee must take leave before 30 days). And we only recognize notice as sufficient when an employee provides "enough information for the employer to reasonably conclude that an event described in [the] FMLA has occurred." *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 450 (6th Cir. 1999). So a request for leave with insufficient information about the basis for the FMLA request is not an FMLA attempt.

Simply stated, an employee's initial request must provide sufficient notice of an FMLA right for an employer's obligations to arise. *See* § 2612(e) (containing notice requirements for foreseeable leave); § 2613 (providing employers ways to certify that the leave qualifies under the

FMLA).  For example, an employer would have sufficient notice if an employee requested leave to take care of a new-born son.  *See* § 2612(a)(1)(A).  That employee's leave request would fall within the scope of FMLA protection.  And the employer would then "bear[] the obligation to collect any additional information necessary to make the leave comply with the requirements of the FMLA."  *Hammon*, 165 F.3d at 450.

Pair the FMLA's sufficient notice trigger with (a)(1), which provides that employers cannot "interfere with, restrain, or deny" employees' attempts to obtain FMLA rights. § 2615(a)(1).  Employers can only "interfere with" attempts at FMLA leave *after* their obligations arise.  It then follows that when an employer has sufficient notice of an employee's potential-FMLA right, an employer's obligations kick in, and that employer cannot "interfere with" an employee's attempt to obtain FMLA leave.  But that can change when the attempt ends.

In this case, there is a serious question about whether Milman provided sufficient notice of her desire to take FMLA leave to Fieger & Fieger.  She will have to prove that she provided her employer with "enough information" to conclude that she needed to take FMLA leave to care for her son with a serious medical condition.  *Hammon*, 165 F.3d at 450.

**B.  An Attempt's End**

The next issue is defining the boundaries of an attempt to take FMLA leave.  Under our precedent, an "attempt" ends when an employee takes leave—regardless of whether it turns out that the FMLA protects that leave.

We require employees with retaliation claims to prove that the FMLA protects any actual leave taken.  *Branham v. Gannet Satellite Info. Network, Inc.*, 619 F.3d 563, 568 (6th Cir. 2010) (requiring an employee who took leave to "prove that she was entitled to FMLA leave" for her to "prevail on . . . her retaliation claim").  So if an employee takes leave because of sickness and "cannot demonstrate that his challenged leave was caused by a 'serious health condition,'" the FMLA does not protect that leave.  *Bauer v. Varity Dayton-Walther Corp.*, 118 F.3d 1109, 1111 (6th Cir. 1997).  Or if an employee takes leave to take care of her sick son, that employee "has a cause of action under [the] FMLA only if" her son "had a serious health condition that required" the employee's care.  *Perry v. Jaguar of Troy*, 353 F.3d 510, 514 (6th Cir. 2003).  In either case,

the attempt must end when the employee takes leave because she can only succeed on a FMLA-retaliation claim by proving entitlement to that leave.

So to avoid *Branham*'s framework, Milman must show that her employer punished her for her request per se, not for any "leave" that she might have taken.  Milman tries to thread the needle here by alleging that she was fired after she requested leave that she thought would be FMLA protected, (R. 1, First Amended Complaint, PageID 100 ¶¶ 83–88), and after she received permission to work from home, (*id.* at PageID 96–97 ¶¶ 59–64.)  Thus, she claims that any time she spent at home was work time and not leave.  (Appellant Br. at 8, 11.)  Again, at this stage of the case, I would allow her claim to move forward.

## III.

For these reasons, I agree with the opinion that we should reverse and remand the case for further proceedings.