NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0266n.06

No. 23-1114

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

Jun 18, 2024

KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| LATRICE M. CRISPELL, | ) | |
| Plaintiff - Appellant, | ) | |
|  | ) | |
|  | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
|  | ) | THE EASTERN DISTRICT OF |
| FCA US, LLC, | ) | MICHIGAN |
| Defendant - Appellee. | ) | OPINION |
|  | ) | |

Before: WHITE, STRANCH, and NALBANDIAN, Circuit Judges.

STRANCH, J., delivered the opinion of the court in which WHITE, J., joined. NALBANDIAN, J. (pp. 27–33), delivered a separate dissenting opinion.

**JANE B. STRANCH, Circuit Judge.** Plaintiff-Appellant Latrice Crispell sued her former employer, FCA US, LLC, for violations of the Family and Medical Leave Act, the Americans with Disabilities Act, and the Michigan Persons with Disabilities Civil Rights Act. She contends that FCA violated these laws by interfering with her right to take leave, denying her reasonable accommodations, and retaliating against her for exercising her statutory rights. The district court granted FCA's motion for summary judgment, concluding that Crispell did not properly raise an interference claim under the FMLA and failed to sufficiently support her failure-to-accommodate and retaliation claims. Because Crispell introduced sufficient evidence on each claim from which a reasonable jury could find for her at trial, we **REVERSE** the district court's grant of summary judgment for FCA and **REMAND** the case for further proceedings.

## I. BACKGROUND

### A. Crispell's Work and Health History

Crispell began working in FCA's Warrant Truck Assembly Plant in 1995. From roughly 2003 onward, she served as a "floater," meaning she filled in at a variety of positions where needed. In that role, she reported to work at 5:00 a.m.

During much of her time at FCA, Crispell suffered from major depression, mood swings, and anxiety, which qualified her to take leave through the Family and Medical Leave Act (FMLA). Beginning in 2012, in support of Crispell's FMLA leave requests, Crispell's psychiatrist Dr. Leon Rubenfaer submitted annual reports to FCA explaining Crispell's condition. *See* 29 U.S.C. §§ 2612(a)(1)(D), 2613(a)-(b). These reports stated that Crispell's symptoms would incapacitate her on an intermittent basis. After receiving the reports, FCA approved Crispell's FMLA leave requests from 2012-2017, permitting her to take intermittent time off when medically necessary.

Dr. Rubenfaer submitted a report to FCA on January 28, 2018 to support Crispell's FMLA leave request for that year. Although FCA initially rejected that report because Dr. Rubenfaer had not stated that Crispell was unable to perform her essential job functions while experiencing symptoms of her medical condition, Crispell's 2018 FMLA leave was approved on February 26, 2018 after Dr. Rubenfaer submitted a revised report. The approval letter explained that Crispell was "required to report all absences and tardiness in accordance with FCA's mandatory Call-in Procedure," which required a call-in thirty minutes before an employee's start time. The letter also noted that "[a] failure to properly report any absence or tardy from work may result in disciplinary action, up to and including discharge." There was an exception to this rule, however: As an FCA director testified, an employee using FMLA leave could be excused from FCA's 30-

minute call-in requirement if she provided "a statement to explain why on that particular day . . . [she] could not make the 30-minute call-in."

### B. FCA's Attendance Policies and Exceptions

In 2015, FCA and Crispell's union, the United Auto Workers (UAW), entered a Memorandum of Understanding (MOU) concerning tardiness and absenteeism. The MOU details a disciplinary policy that governed penalties for employee tardies throughout the remainder of Crispell's tenure at FCA. Under the MOU, once an employee incurs two tardies in a twelve-month period, the first subsequent tardy—deemed an "occurrence"—results in a verbal warning, the second in a written warning, and the third in a written warning and counseling. Then more serious penalties kick in: The fourth occurrence triggers a three-day layoff, the fifth a thirty-day layoff, and the sixth results in discharge.

The MOU also specifies that an employee who expects to be late to or absent from work must call thirty minutes in advance of her shift to avoid occurrences. It then lays out exceptions to the rule. As written, these exceptions—colloquially known as "TRAG"—excuse the failure to call in when an unavoidable tragic circumstance prevents an employee from doing so and an employee later provides documentation explaining why a timely call was not possible. According to the MOU, examples of proper TRAG exceptions include, but are not limited to, a severe medical emergency or a car accident that results in significant injury preventing an advance call-in. The parties agree, however, that TRAG exceptions were permitted in practice to cover a wider variety of circumstances than those stated in the MOU. For example, one FCA manager testified that he had given TRAG exceptions when employees were stuck behind car accidents or had to take a longer, alternate route to work because of severe flooding. And FCA Labor Representative Diamond Dortch noted that TRAG exceptions could be given on account of severe weather,

badge issues that prevented an employee from clocking in on time, or if an employee's tire blew out on the way to work.

Dortch, the assembly plant's Director of Labor Relations Scott Campbell, and FCA labor representative Brian Kauflin all provided testimony that TRAG exceptions were given when an event prevented "the masses" from arriving at work on time. But the MOU itself contains no "masses" requirement; instead, it explains that an exception can apply when "[t]he employee" suffers circumstances permitting an exception. Dortch also testified that TRAG exceptions "can be done on an individual basis depending on what the situation is" before offering the badge-issue and flat-tire examples described above. Kauflin likewise stated that a TRAG could be given even if "it's just one person."

In addition to TRAG exceptions, employees could be excused from an absence or tardy by using personal time, known as "PAA" or "PERE" time. A Letter of Understanding between FCA and the UAW states that PERE time could be used "provided [that] the request is made thirty (30) minutes or more prior to the start of [a] shift." The Letter also states that an employee may not use personal time if she had been issued a layoff—that is, had reached step four or higher—under the progressive disciplinary policy. Crispell, however, disputes that these restrictions were enforced in practice. For instance, both she and another FCA employee declared that they had been given personal time even when they first requested it upon arrival at work. Kauflin likewise testified that even if an employee did not report PERE time in advance, supervisors could use the time to cover a tardy. Dortch testified that a supervisor had discretion to grant personal time to an employee even if that employee is at step four or higher of the disciplinary ladder, though—following a deposition break—she changed her testimony to state that PERE time could be granted only in accordance with the Letter of Understanding's terms. Both Kauflin and Dortch also

testified that the decision to give PERE time was generally up to the supervisor (though, as noted, Dortch later changed her view).

Finally, Crispell contends that although it is not mentioned in the MOU, supervisors had discretion to excuse late starts by retroactively changing an employee's start time. Both Crispell and her coworker declared that supervisors had given them late starts in the past. Crispell's supervisor Jody Jones and Kauflin, however, both testified that late starts are given not to individual employees but to entire work groups based on specific job duties. Jones further testified that he had never given anyone, including Crispell, a late start to excuse a tardy.

### C.      Crispell's Suspensions and Termination

FCA's progressive discipline policy applied to Crispell because she had previously incurred over two tardies in a twelve-month period. Crispell then received three tardies during May, June, and August 2017.

On January 24, 2018, Crispell incurred her fourth tardy. She reported her anticipated late arrival at 4:42 a.m., eighteen minutes before her 5:00 a.m. start time. On February 6, FCA notified Crispell that because this tardy put her on the fourth step of the disciplinary ladder, she was being suspended for three days. In response, Crispell submitted a statement arguing that "[d]ue to [her] covered illness it would be unlawful to set [a] penalty upon" her for her tardy, and that she should be exempt from any penalties "due to the nature of [her] covered illness." Crispell also says that someone in FCA's labor relations department advised her to submit a statement from her doctor concerning why she failed to call in on time on January 24. Dr. Rubenfaer gave Crispell a statement, which Crispell presented to an FCA labor relations representative, saying that when Crispell has a "flare up" or "episode," she will be "unable to do or perform any and all job functions that would require her to remember daily tasks."

Crispell then reached disciplinary step five on March 24 when she called fifteen minutes in advance of her 5:00 a.m. shift to report that she would be late. An FCA manager directed Kauflin to suspend Crispell for thirty days in accordance with FCA's disciplinary system but to also give Crispell an opportunity to explain why she was unable to call in more than thirty minutes before her shift. Crispell then submitted a statement that largely mirrored the one after the January 24 tardy: she again wrote that "due to [her] covered FMLA illness[,]" "[i]t would be unlawful" to penalize her for calling in late.

Kauflin testified that he participated in a disciplinary meeting at some point after one or both of Crispell's January and March 2018 tardies. Kauflin "ask[ed] [Crispell] to provide information for why she was unable to call in timely and abide by the 30-minute call-in period," thereby offering "her the opportunity to give [him] a detailed explanation of what happened." Crispell's response, according to Kauflin, was that she had "FMLA and that's all [she] need[ed]." On his telling, Kauflin replied by saying that he "need[ed] . . . more details as to what specifically occurred that prevented [her] from calling in" because "[j]ust having FMLA is not enough," but Crispell "failed to provide that information" and merely reiterated her entitlement to FMLA leave. Crispell disputes this narrative, stating that she both "do[es] not recall any conversation with [Kauflin] about [her] call-ins" and is certain "that [she] did not tell him that [she] wanted to be excused from calling in just because [she] was on FMLA."

On April 20, Crispell filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). The EEOC charge alleged that FCA had failed to accommodate Crispell's disability and discriminated against her by refusing to excuse her tardies in January and March 2018. Campbell testified that he was aware of the charge by September 2018 at the latest.

On September 20, Crispell received her sixth tardy under the discipline policy. She was stopped by a train on her way to work and, because cars blocked her from accessing any exits, she had no way to move. While she initially expected the train to clear quickly, it did not, and she realized that she was past the time by which she could have timely called in. As a result, she felt she had no choice but to wait for the train to move and then race to the plant, which she did, punching in three minutes late at 5:03 a.m. When she arrived, Crispell says that she asked Jones for a late start time and "he said that he would take care of it." But a few minutes later, Jones returned and told Crispell that an unnamed "they" refused to approve a late start. Crispell then asked if she could be excused from her tardy by using PERE time, to which Jones responded that "he would do it" and that PERE time was the "only thing that would save her." After walking away again, however, Jones returned and reported that "they" refused to grant Crispell the PERE time to cover the tardy. Crispell and UAW representative William Bell then went to FCA's labor relations office to meet with Campbell. After Crispell explained that she had been late because of the train, Bell and Campbell met without her; Bell then informed Crispell that he had been unable to get Campbell to excuse the tardy.

After her shift was over, Crispell called the train operator, Conrail, and an employee there verified that a train had blocked a portion of her road to work from 4:30 to 5:00 a.m. that morning. Crispell also requested stress leave through November 4. On October 23, however, she reported for work, and FCA terminated her based on its conclusion that her September 20 tardy was step six on the disciplinary ladder. A week later, on October 30, Crispell submitted a statement to Bell detailing her experience while stopped by the train, her conversation with the Conrail employee, and why she believed FCA should have excused her final tardy. The same day, UAW filed a grievance to protest Crispell's termination, which FCA denied.

Campbell testified that although he was not certain, he did not recall previously giving a TRAG excuse for tardies because an employee had been blocked by a train. FCA and Conrail's records, however, show that seven FCA employees were provided TRAG excuses—even though they did not call in before arriving to work—when they were previously blocked by the same train that prevented Crispell from reaching work on time. When presented with records of these exceptions, Kauflin testified that he would not have granted them without Campbell's permission.

### D. Procedural History

Crispell submitted an EEOC charge concerning her discharge on November 13, 2018, which was separate from her prior April 2018 charge. On December 5, 2019, the EEOC sent Crispell right-to-sue letters on both of her EEOC charges. Crispell filed this case in the Eastern District of Michigan on March 3, 2020. Her complaint alleges that her suspensions and termination violated the FMLA, the Americans with Disabilities Act (ADA), and the Michigan Persons with Disabilities Civil Rights Act (PWDCRA).

FCA moved for summary judgment, which the district court granted. It first found that "[e]ven under the broadest reading of Crispell's complaint," she failed to allege that FCA had interfered with her FMLA rights, which is necessary to make out an FMLA violation under an "interference" theory. As a result, the court analyzed Crispell's FMLA claim under a "retaliation" theory, granting summary judgment because Crispell had not shown that FCA's denials of FMLA leave to cover her tardies were pretext for unlawful retaliation. The district court rejected Crispell's ADA and PWDCRA retaliation claims for substantially the same reason, finding that there was "no evidence from which a reasonable fact-finder could conclude that Crispell's [April 2018] EEOC charge played a factor in FCA's decision to terminate her."

The district court likewise granted FCA summary judgment on Crispell's ADA and PWDCRA failure-to-accommodate claims. The court first determined that Crispell was not a qualified person with a disability under either statute because she had not shown that she could meet FCA's attendance requirements, an essential function of her job. It then determined in the alternative that Crispell's requested accommodation—which it described as a "request to be exempted from the 30-minute call-in rule for all instances of intermittent FMLA leave"—was not reasonable. Finally, the district court found that Crispell had abandoned her ADA and PWDCRA discrimination claims by failing to defend them against FCA's summary judgment motion. Crispell timely appealed, challenging all aspects of the district court's decision save for its determination that she had abandoned her ADA and PWDCRA discrimination claims.

## II.   STANDARD OF REVIEW

We review de novo a district court's grant of summary judgment. *King v. Steward Trumbull Mem'l Hosp., Inc.*, 30 F.4th 551, 559 (6th Cir. 2022). "Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)). Fact disputes are material and genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Kirilenko-Ison v. Bd. of Educ.*, 974 F.3d 652, 660 (6th Cir. 2020)). When reviewing a summary judgment motion, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in that party's favor. *Id.* At this stage, a court may not weigh evidence or make credibility judgments. *Id.* at 559-60.

## III.    ANALYSIS

### A.    Crispell's FMLA Interference Claim

As the Family and Medical Leave Act's name suggests, it was enacted in part "to entitle employees to take reasonable leave for medical reasons." 29 U.S.C. § 2601(b)(2). In accordance with that purpose, the FMLA permits eligible employees to take up to twelve weeks of leave per year "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). To protect this substantive right for eligible employees, "the FMLA enumerates prohibited acts" that could prevent the proper use of FMLA leave. *Milman v. Fieger & Fieger, P.C.*, 58 F.4th 860, 866 (6th Cir. 2023). First, it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" protected by the FMLA. 29 U.S.C. § 2615(a)(1). Second, it is "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the FMLA. *Id.* § 2615(a)(2).

Our precedent "recognizes two types of claims" based on alleged violations of these prohibitions. *Milman*, 58 F.4th at 866. "The first, known as an entitlement or interference claim, arises when an employee is wrongfully denied a substantive entitlement—for example, the employee is denied leave to which she is entitled." *Id.* (citing *Hoge v. Honda of Am. Mfg.*, 384 F.3d 238, 244 (6th Cir. 2004)). "The second type of claim, generally known as a retaliation or discrimination claim, arises when an employer takes an adverse employment action against the employee for exercising or attempting to exercise a right protected by the FMLA." *Id.* (citing *Bryant v. Dollar Gen. Corp.*, 538 F.3d 394, 400-02 (6th Cir. 2008)).

The district court found that Crispell's complaint presented only a "retaliation" claim, and declined to analyze her FMLA claim under an "interference" theory. Crispell contends that the

court erred in doing so, and further argues that her FMLA claim survives summary judgment when considered under an interference theory.

### 1. Whether Crispell Presented an FMLA Interference Claim

Because a plaintiff need only put a defendant on fair notice of the claims presented and the grounds upon which they rest, she has generally "not waived a claim based on the interference theory where the complaint alleged general violations of 29 U.S.C. § 2615 that could apply to both interference and retaliation claims." *Seeger v. Cincinnati Bell Tel. Co.*, *LLC*, 681 F.3d 274, 282 (6th Cir. 2012) (quoting *Morris v. Fam. Dollar Stores of Ohio, Inc.*, 320 F. App'x 330, 335 (6th Cir. 2009)). As we have explained, an approach that would "box plaintiffs into one theory or the other at the complaint stage of an FMLA action" based on a narrow reading of the complaint's allegations is "overly rigid." *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 446 (6th Cir. 2007). Instead, the fundamental issue regarding raising an FMLA interference claim is whether the complaint alleges that the plaintiff failed to "receive[] all of the FMLA leave to which [she] was entitled." *Seeger*, 681 F.3d at 283. If so, the plaintiff has pleaded that she was "wrongfully denied a substantive entitlement," and courts should conduct an FMLA interference-theory analysis. *Milman*, 58 F.4th at 866.

Crispell's complaint raised an interference claim. It specifically took issue with her fourth and fifth strikes under FCA's progressive discipline policy by noting that she was suspended on February 6, 2018, and again on March 28, for calling in late even though she "immediately provided FCA with a statement that her late call in had been due to the physical condition[s] documented in Dr. Reubenfaer's . . . medical statement." Fairly read, the allegations of her complaint raise the claim that although she was entitled to use FMLA leave to cover the late call-ins for which FCA suspended her in February and March 2018, Crispell was "wrongfully denied"

that "substantive entitlement." *Milman*, 58 F. 4th at 866. Accordingly, Crispell's claim must be considered under an interference theory.

### 2.     Crispell's FMLA Interference Claim on the Merits

Crispell's raising of an FMLA interference claim is the first step in her challenge—the next is showing that such a claim can survive summary judgment on the merits. "To make out a claim for FMLA interference, a plaintiff must show that '(1) [she] was an eligible employee, (2) [the] defendant was a covered employer, (3) [she] was entitled to leave under the FMLA, (4) [she] gave [the] defendant notice of [her] intent to take leave, and (5) the defendant denied [her] FMLA benefits or interfered with FMLA rights to which [she] was entitled.'" *Render v. FCA US, LLC*, 53 F.4th 905, 914 (6th Cir. 2022) (quoting *Harris v. Metro. Gov't of Nashville & Davidson Cnty.*, 594 F.3d 476, 482 (6th Cir. 2010)). While FCA concedes that Crispell has met elements one, two, and five of this test, it challenges Crispell's showings on elements three and four—entitlement and notice.

Both contested elements involve Crispell's admitted failure to report her January 24 and March 24, 2018 tardies more than thirty minutes in advance. Because the "approximate timing" of Crispell's intermittent FMLA leave was "not foreseeable," the regulation governing her notice requirements is 29 C.F.R. § 825.303. *Render*, 53 F.4th at 925 (Moore, J., controlling concurrence) (quoting 29 C.F.R. § 825.303(a)). Under that regulation, even if leave is unforeseeable, "an employee must comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances." 29 C.F.R. § 825.303(c). FCA's usual and customary practice required employees to make their leave request at least thirty minutes prior to their start time. As the letter approving Crispell's leave outlined, this general rule applied to Crispell's use of FMLA leave. So Crispell's FMLA interference claim distills to whether she

has submitted evidence from which a reasonable juror could find that "unusual circumstances" existed that excused her from FCA's thirty-minute rule and entitled her to use leave to cover the January and March 2018 tardies.

Unusual circumstances include "emergenc[ies] requiring leave because of a FMLA-qualifying reason." 29 C.F.R. § 825.303(c). FCA does not dispute that if a medical exigency related to Crispell's FMLA-covered condition prevented her from calling in timely in January and March 2018, FCA would have permitted Crispell to use FMLA leave to cover the tardies. FCA's argument, rather, is that Crispell did not provide sufficient detail from which FCA could conclude that her failure to timely call in was due to her condition.

The Second Circuit has held that whether an unusual circumstance prevented an employee from complying with an employer's notification procedure "is a question of fact, not of law." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 162 (2d Cir. 2011). That conclusion is in keeping with our own holding that "the adequacy of an employee's [FMLA] notice" generally "is 'an intensely factual determination.'" *Render*, 53 F.4th at 926 (Moore, J., controlling concurrence) (quoting *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012)). Here, the record shows that Crispell submitted letters after each late call-in that specifically cited her "covered illness" as the reason that she should not be penalized. Her letter after the January 24 incident further argued that she should not be penalized due to the "nature of [her] covered illness." In addition, after her three-day suspension, Crispell "contacted [FCA] Labor Relations" and "was advised to submit a statement from [her] doctor as to why [she] had been unable to call in on time for the January 24 tardiness"; in response, she provided a letter from Dr. Rubenfaer explaining her symptoms. Finally, FCA had dealt with Crispell on this very issue and knew the details of her medical condition.

Additional details of Crispell's symptoms on the mornings of January 24 and March 24 may have been helpful. But the evidence shows that Crispell referenced her FMLA-covered condition, which FCA had ample familiarity with, in two letters about her late call-ins, and provided an additional statement from her doctor—in direct response to FCA's question about why she did not call in timely on January 24—again tying her late call-in to that condition. A jury could reasonably find that this information sufficiently communicated Crispell's assertion that "unusual circumstances"—in the form of symptoms from her FMLA-qualifying illness—excused her failure to comply with FCA's thirty-minute rule.

The letters Crispell submitted after each tardy also complied with her initial burden under the governing regulation's "[c]ontent of notice" provision, which requires an employee requesting leave to "specifically reference either the qualifying reason or the need for FMLA leave." 29 C.F.R. § 825.303(b). That provision further provides that "[a]n employee has an obligation to respond to an employer's questions designed to determine whether an absence is potentially FMLA-qualifying[,]" and that "[f]ailure to respond to reasonable employer inquiries regarding the leave request may result in denial of FMLA protection." *Id.* But material disputes of fact preclude a finding that FCA was entitled to deny Crispell leave based on this language. Kauflin testified that he asked Crispell to explain why she could not call in timely for her January or March 2018 tardies, and that she did not provide any information beyond her general entitlement to FMLA leave. But Crispell testified that she does not recall this conversation, and specifically disputes that she told Kauflin that she was excused from calling in just because she was on FMLA. Whether Crispell and Kauflin had a conversation in which she was asked to explain her reason for not calling in timely, and exactly what was said if such a conversation occurred, are disputed issues that must be resolved by a jury.

Nor do FCA's cited cases support a conclusion that summary judgment is warranted. Unlike *Acker v. General Motors, LLC*, where evidence showing that a plaintiff had called one phone line precluded a finding that unusual circumstances prevented him from calling another, there is no evidence that Crispell took any actions demonstrating that she could have called in timely but chose not to do so. 853 F.3d 784, 789-90 (5th Cir. 2017). And *Jorgenson v. Henry Ford Health System* turned on the plaintiff's failure to adhere to multiple steps of an employer's notice system during a period when the plaintiff did not suggest any physical reason for noncompliance. No. 16-13389, 2018 WL 4701707, at *7 (E.D. Mich. Sept. 30, 2018). That case says little about how to approach the situation here, in which an employee claims a medical inability to satisfy an employer's notice requirements.

Relying on examples from the governing regulation, the dissent argues that a circumstance cannot be "unusual" if it reflects the condition for which the plaintiff has FMLA leave. FCA's briefing did not make this argument, and we generally are "not in the business of developing parties' arguments." *MY Imagination, LLC v. M.Z. Berger & Co.*, 726 F. App'x 272, 276 (6th Cir. 2018). Setting that aside, neither the plain meaning of the phrase "unusual circumstances" nor the single example of such circumstances in the regulation—an incident requiring emergency medical treatment—dictates that unusual timing of an FMLA-covered condition cannot itself represent an unusual circumstance, as Crispell contends. *See Render*, 53 F.4th at 925 (Moore, J., controlling concurrence) (recognizing that the examples provided in § 825.303 are not "exhaustive"). Because material disputes of fact exist about whether Crispell's failure to call thirty minutes in advance of her tardies was due to unusual circumstances within the meaning of 29 C.F.R. § 825.303(c), her FMLA interference claim must be resolved by a jury.

B.      ADA and PWDCRA Failure-to-Accommodate Claims

Crispell also appeals the district court's dismissal of her ADA and PWDCRA failure-to-accommodate claims.  These laws share similar text.  The ADA requires employers to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified [employee] with a disability" unless the employer "can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business."  42 U.S.C. § 12112(b)(5)(A).  Likewise, the PWDCRA states that individuals "shall accommodate a person with a disability for purposes of employment . . . unless . . . the accommodation would impose an undue hardship."  Mich. Comp. Laws § 37.1102(2).

Given this comparable language, it is unsurprising that the standard for making out a failure-to-accommodate claim is the same under both laws.  *See Hrdlicka v. Gen. Motors*, 63 F.4th 555, 570 (6th Cir. 2023).  The plaintiff bears an "initial burden of making out a prima facie case."  *King*, 30 F.4th at 560.  To do so, she "must show that (1) she was disabled within the meaning of the statute, (2) she was otherwise qualified for her position, with or without reasonable accommodation; (3) the defendant knew or had reason to know about her disability; (4) she requested an accommodation; and (5) the defendant failed to provide the necessary accommodation."  *Id.* (quoting *Kirilenko-Ison*, 974 F.3d at 669) (brackets omitted).  The requested accommodation must also be objectively reasonable.  *Hrdlicka*, 63 F.4th at 570.  If the plaintiff makes her prima facie showing, "then the burden shifts to the employer to show that the accommodation would cause undue hardship for the employer."  *King*, 30 F.4th at 560.

The district court first held that Crispell was not qualified for her position because "her periodic inability to work foreclosed her from being a 'qualified individual' under the ADA."  It then held in the alternative that, even if Crispell was a qualified individual, her requested

accommodation—characterized as a "request to be exempted from the 30-minute call-in rule for all instances of intermittent FMLA leave"—was not reasonable. On appeal, Crispell challenges (and FCA defends) both conclusions.

### 1. Whether Crispell was a Qualified Individual

"The term 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). "[R]egular and predictable on-site attendance" is an essential function of "most jobs, especially the interactive ones." *E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 761-62 (6th Cir. 2015) (en banc). And "[a]n employee who cannot meet the attendance requirements of the job at issue cannot be considered a 'qualified' individual protected by the ADA." *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (6th Cir. 1998) (quoting *Tyndall v. Nat'l Educ. Ctrs. Inc.*, 31 F.3d 209, 213 (4th Cir. 1994)). But these rules do not mean that an employee whose medical situation requires her to take intermittent leave is automatically unqualified under the ADA. To the contrary, "approved medical leave may be a reasonable accommodation and an inability to work while on such leave does not mean that an individual is automatically unqualified." *King*, 30 F.4th at 562 (quoting *Terre v. Hopson*, 708 F. App'x 221, 228-29 (6th Cir. 2017)) (brackets omitted).

Determining whether Crispell was unqualified thus requires defining what level of attendance represented an "essential function" of her role at FCA. "Whether a job function is essential is a question of fact," making it "typically not suitable for resolution on a motion for summary judgment." *Keith v. County of Oakland*, 703 F.3d 918, 926 (6th Cir. 2013) (citing *Kiphart v. Saturn Corp.*, 251 F.3d 573, 585 (6th Cir. 2001)). The rule is not "that whatever the employer says is essential necessarily becomes essential." *Ford Motor Co.*, 782 F.3d at 765.

Instead, whether a given job function is essential turns on "(1) the employer's judgment; (2) the written job description; (3) the amount of time spent performing the function; (4) the consequences of not requiring performance of the function; (5) the work experience of past incumbents of the position; and (6) the current work experience of incumbents in similar jobs." *Keith*, 703 F.3d at 925-26 (citing C.F.R. 29 § 1630.2(n)(3)). Put more simply, if a purportedly essential function is not "job-related, uniformly enforced, and consistent with business necessity," summary judgment is inappropriate. *Ford Motor Co.*, 782 F.3d at 766 (quoting *Tate v. Farmland Indus., Inc.*, 268 F.3d 989, 993 (10th Cir. 2001)).

FCA does not supply any evidence establishing a certain attendance rate as being essential to the floater role. The evidence that is in the record, moreover, could suggest to a reasonable juror that the amount of leave used by Crispell did not render her unqualified as a matter of law. During the segment of her twenty-three-year career at FCA most relevant to this case—January to March 2018—Crispell was absent or tardy fifteen times. Crispell has presented evidence that an anonymous FCA employee "A.D.," who also worked as a floater, was absent or tardy roughly the same amount (thirteen times) during that timeframe, and remained employed as a floater at FCA. And A.D.'s absences, like Crispell's, were due to a medical condition and thus difficult to predict.

A reasonable juror could conclude from this evidence, and the lack of evidence presented by FCA, that neither perfect nor near-perfect attendance as a floater was truly "consistent with business necessity." *Ford Motor Co.*, 782 F.3d at 766 (quoting *Tate*, 268 F.3d at 993). Of course, at trial, FCA is entitled to present testimony or other evidence speaking to the attendance rate necessary to be qualified as a floater, and to argue that Crispell's attendance rate fell below that level. But this record does not establish that Crispell's absences and tardies made her unqualified for the position.

2.     Whether Crispell Requested a Reasonable Accommodation

That leaves the issue of whether Crispell sought a reasonable accommodation. FCA casts her request as one to be "categorically excused from the [thirty-minute] call-in rule." Crispell, by contrast, contends that she merely asked FCA to "accommodate her medical condition by modifying its call-in rule on those few occasions where she had a flare-up just before coming to work."

There is evidence in the record supporting Crispell's framing. She signed an FMLA leave agreement specifying that she was generally required to comply with the thirty-minute rule. In her declaration, Crispell attests that she was "aware of . . . the 30-minute call-in rule and attempted to comply with" it. Most of her call-ins for tardies and absences during the time periods that she had FMLA leave, moreover, were received more than thirty minutes in advance. Given this context, and making all justifiable inferences in Crispell's favor, a juror could reasonably find that FCA would have understood Crispell's request to be "[e]xempt[] . . . from [the] 30 minute rule, and the call-in procedure," R. 52-15, Crispell Dep., PageID 1166, as one to be exempt only when her known medical symptoms prevented her from calling in timely.

The scope of Crispell's accommodation proposal was somewhat unclear when she asked FCA to remove its disciplinary actions for January and March 2018. But an employee's initial accommodation proposal need not be perfect. *King*, 30 F.4th at 564. Once a request is made, moreover, "'the employer has a duty to engage in an interactive process' to try to determine whether the employer can accommodate the employee's disability," which entails a duty to conduct an individualized inquiry into possible accommodations. *Id.* at 564-65 (quoting *Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 421 (6th Cir. 2020)). Kauflin's testimony about his alleged conversation with Crispell asking for more details on her FMLA request could, if believed by a

jury, be read to satisfy FCA's burden to engage in that interactive process. But Crispell disputes that testimony. And "[s]ummary judgment is available only where there is no genuine dispute that the employer has engaged in the interactive process in good faith." *Cheatham v. Postmaster Gen. of U.S.*, No. 20-4091, 2022 WL 1073818, at *9 (6th Cir. Apr. 11, 2022) (quoting *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1116 (9th Cir. 2000) (en banc), *vacated on other grounds sub nom. US Airways, Inc. v. Barnett*, 535 U.S. 391 (2002)).

The disputed facts about the scope of Crispell's requested accommodation and FCA's response to that request obligate the court, at this stage, to accept as true Crispell's assertion that she asked to be exempted from the thirty-minute rule only when medical symptoms precluded compliance. *See King*, 30 F.4th at 559. "[R]etroactively granting emergency leave," like the leave that Crispell requested to cover her January and March tardies, "can be a reasonable accommodation." *King*, 30 F.4th at 562-63. FCA also admits that its standard practice was to excuse employees from the thirty-minute rule if the employee provided a medical reason for failure to comply with the rule. On this record, Crispell's request to be excused from the call-in rule when her symptoms prevented compliance simply represented a reasonable request to participate in FCA's typical procedures.[1]

---

[1] The dissent contends that Crispell was not a qualified employee and did not request a reasonable accommodation. Both conclusions, however, resolve factual issues in FCA's favor. Whether Crispell was a qualified employee turns on whether her occasional inability to timely call in tardies rendered her so unreliable as to be unable to perform the job of floater. Given the record's indication that FCA had some tolerance for late call-ins, there is a material dispute of fact on that question. As for whether Crispell's requested accommodation was reasonable, with inferences made in her favor, Crispell did not request leave from the call-in requirement "whenever calling in doesn't suit her." *Cf. Wheeler v. Jackson Nat'l Life Ins. Co.*, 159 F. Supp. 3d 828, 854 (M.D. Tenn.) (rejecting as categorically unreasonable a plaintiff's request to "miss work whenever he needed to and apparently for so long as he felt" (cleaned up)), *aff'd*, 666 F. App'x 453 (6th Cir. 2016). Resolving facts and inferences in her favor, Crispell requested an accommodation on the limited occasions when a flare-up made her unable to call in timely. On some records, no doubt, evidence about the nature of an employee's role may show as a matter of law that even a request like Crispell's is per se unreasonable. *See Banks v. Bosch Rexroth Corp.*, 610 F. App'x 519, 528 (6th Cir. 2015) (concluding that an accommodation was unreasonable because the parties agreed that "regular attendance was an essential function of [the plaintiff's] job" and the plaintiff's manager testified that frequent absences could not be accommodated for the

As a result, Crispell submitted sufficient evidence from which a jury could find that she satisfied her prima facie burden under the ADA and the PWDCRA. Doing so returns the burden to FCA to explain why granting her request would have caused the organization undue hardship. *See King*, 30 F.4th at 560. But FCA makes no real attempt to meet that burden: Although its briefing uses the phrase "undue hardship," FCA does not present any argument on this element of the test, and thus does not explain how Crispell's request could have imposed an undue hardship even if it were reasonable. Summary judgment is accordingly unwarranted for Crispell's reasonable-accommodation claims.

### C.  FMLA, ADA, and PWDCRA Retaliation Claims

Crispell's final challenge is to the district court's denial of her retaliation claims under the FMLA, ADA, and PWDCRA. All three laws forbid an employer from discharging an employee in retaliation for the employee's lawful activity taken in accordance with rights provided by statute. 29 U.S.C. § 2615(a) (FMLA); 42 U.S.C. § 12203(a) (ADA); Mich. Comp. Laws § 37.1602(a) (PWDCRA). Where, as here, "retaliation claims are based on indirect evidence, we analyze them under the familiar *McDonnell Douglas* burden-shifting paradigm." *Kirilenko-Ison*, 974 F.3d at 661; *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that framework, the employee bears an initial burden of making out a prima facie case of retaliation. *Kirilenko-Ison*, 974 F.3d at 661. If she can do so, the employer must provide a legitimate, non-discriminatory basis for the termination; once that burden is met, the plaintiff must offer evidence to demonstrate that the defendant's purported legitimate reason for the discharge was pretext for retaliation. *Id.*

---

plaintiff's specific role). But on this record, where FCA has submitted no such evidence, summary judgment is inappropriate.

The employee's prima facie burden is similar under all three statutes. For her FMLA retaliation claim, Crispell can make out a prima facie case "by showing that (1) she availed herself of a protected right under the FMLA . . . , (2) she suffered an adverse employment action, and (3) that there was a causal connection between the exercise of her rights under the FMLA and the adverse employment action." *Edgar v. JAC Prods.*, 443 F.3d 501, 508 (6th Cir. 2006). The necessary showing is the same under the ADA and the PWDCRA, except that Crispell must additionally show that her protected activity was the but-for cause of the discharge under the ADA, *Ford Motor Co.*, 782 F.3d at 770, or a significant factor in her discharge under the PWDCRA, *Aho v. Dep't of Corr.*, 688 N.W.2d 104, 109 (Mich. Ct. App. 2004).

It is undisputed that Crispell has satisfied the first three elements of her prima facie case under each statute: Her April 2018 EEOC charge was a protected activity, *see George v. Youngstown State Univ.*, 966 F.3d 446, 467 (6th Cir. 2020), and FCA knew about this activity and later terminated her. FCA does dispute that her April EEOC charge caused her termination. Resolving this issue overlaps with the pretext analysis, because "[t]he same evidence can support both a finding of causation for the plaintiff's prima facie case of retaliation and a finding of pretext." *Kirilenko-Ison*, 974 F.3d at 668 (quoting *M.L. v. Williamson Cnty. Bd. of Educ.*, 772 F. App'x 287, 292 (6th Cir. 2019)). As a result, and for efficiency's sake, we address these issues together and proceed through the *McDonnell Douglas* analysis.

FCA has met its burden to provide a nondiscriminatory explanation for Crispell's discharge by arguing that Crispell was not entitled to use any form of leave to cover her late arrival on September 20, 2018, and explaining that this tardy triggered discharge under the disciplinary policy. For her retaliation claims to survive summary judgment, Crispell must therefore provide sufficient evidence to suggest that FCA's "proffered justification '[was] not the real reason' [she]

was disciplined." *Strickland v. City of Detroit*, 995 F.3d 495, 512 (6th Cir. 2021) (quoting *George*, 966 F.3d at 462). "This burden is not heavy, though, as summary judgment is warranted only if no reasonable juror could conclude that the employer's offered reason was pretextual." *Id.* (quoting *George*, 966 F.3d at 462). "A plaintiff can show pretext in three interrelated ways: (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action." *Id.* (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009)) (brackets omitted).

Crispell has provided evidence from which a reasonable juror could find that FCA's proffered reasons for terminating Crispell did not actually motivate or were insufficient to motivate its decision. Beginning with the events of September 20, Crispell states that when she arrived three minutes late after being stuck behind a train, she asked Jones for a late start and "he said that he would take care of it," but Jones then returned and reported that an unnamed "they" declined to approve a late start. Then, according to Crispell, she asked Jones to cover her late arrival with PERE time; he again said that he would, but again was overruled by his superiors. A juror crediting this narrative could reasonably believe that Jones's comments immediately after Crispell's requests evidenced a standard practice of covering tardies like Crispell's, but that FCA's higher-ups decided to deviate from this practice when Crispell arrived late on September 20. Given FCA's knowledge of Crispell's earlier EEOC charge, a reasonable juror could also conclude that FCA's "failure to follow" its typical disciplinary procedures constitutes "probative evidence" of possible retaliation. *Bailey v. Oakwood Healthcare, Inc.*, 732 F. App'x 360, 365 (6th Cir. 2018).

In addition to a potential inference that FCA's proffered reason was not the true cause of Crispell's discharge, the record also contains "inconsistency" in FCA's explanations of why

Crispell's leave requests were denied, which this court has called "the epitome of pretext meant to mask retaliatory discrimination, at the very least raising a factual question for a jury to resolve." *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 426 (6th Cir. 2021) (quoting *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 527 (6th Cir. 2008)). For example, the FCA-UAW Letter of Understanding ostensibly limits the use of PERE to requests made over thirty minutes in advance of a shift by an employee at step three or lower of the disciplinary ladder. But both Crispell and a coworker testified that the thirty-minute rule was not enforced in practice, and labor representative Kauflin affirmed that supervisors could cover tardies with PERE time even without an advance call-in. Labor representative Dortch, moreover, initially testified that a supervisor could grant PERE time to an employee regardless of the employee's location on the disciplinary ladder before changing that testimony after a deposition break. A reasonable juror could find from this evidence that the stated restrictions on PERE time were not actually enforced in the ordinary course—thus casting doubt on FCA's reliance on the terms of those restrictions to deny PERE time to cover Crispell's late arrival on September 20.

There are similar gaps in FCA's statements about why Crispell was not entitled to a "TRAG" exception for unavoidable circumstances leading to a late arrival. FCA argues that the TRAG exception is available only when the "masses" are subject to a delay. But both Dortch and Kauflin provided testimony stating that TRAG exceptions could be made on an individual basis, and Dortch specified examples—badge issues or tire problems—where a TRAG exception could be appropriate for a single employee. Perhaps most tellingly, the 2015 MOU does not limit TRAG exceptions to the masses.[2] Taken together, this evidence indicates that FCA's claim that Crispell

---

[2] The MOU does require an employee seeking a TRAG exception to document the reason for noncompliance with the call-in requirement. At oral argument, FCA's attorney argued that Crispell failed to satisfy this requirement because she did not "produce documentation" substantiating that a train blocked her route "at the time that the decision [to

was not entitled to a TRAG exception did not align with its actual practices, which could support an inference that Crispell would have been granted an exception but for her prior EEOC charge.

The dissent sees things differently, raising several arguments to support affirmance.[3] These arguments largely appear to reflect a view that a party facing a summary judgment motion bears a substantial evidentiary burden. *See* Dissent at 32 ("To survive summary judgment, 'significant probative evidence must be presented to support the complaint.'" (quoting *Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir. 1991))). It is true that "a scintilla of evidence in support of the plaintiff's position" is "insufficient" at this stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). But the text of the summary judgment rule, our precedent interpreting that rule, and the specific standard applicable to the pretext inquiry all emphasize that a plaintiff's burden in this context is light, because "summary judgment is warranted only if no reasonable juror could conclude that the employer's offered reason was pretextual." *Strickland*, 995 F.3d at 512 (quoting *George*, 966 F.3d at 462); *see* Fed. R. Civ. P. 56(a) (explaining that summary judgment is inappropriate if a nonmoving party shows a "genuine dispute as to *any* material fact" (emphasis added)); *King*, 30 F.4th at 559-60 (emphasizing that the evidence and inferences drawn from the evidence must be viewed, at this stage, in the nonmoving party's favor). Far more than a scintilla of evidence could support a reasonable person's conclusion that FCA's stated reasons for

---

terminate her] was made." Oral Argument at 24:40-25:14, https://perma.cc/4XLX-C3JL. But Crispell was given the tardy that resulted in her termination the same day it occurred. She was then terminated the first day that she returned to work after taking stress leave (October 23). Crispell therefore had no meaningful opportunity to produce documentation before her termination. When her union representative later requested documentation, Crispell provided a statement on October 30 listing the name and contact information of a Conrail employee with whom Crispell had spoken and who could confirm the train's location; Crispell expected the statement would be presented by the UAW in grieving her discharge. A reasonable jury could find from this sequence of events that FCA was not entitled to discharge Crispell for failing to immediately provide documents for her late arrival the day it occurred.

[3] Among those arguments is one that FCA does not make (and that Crispell thus could not respond to)—namely, that the TRAG exception applies only to situations where an employee could not have called in. *But see MY Imagination*, 726 F. App'x at 276.

discharging Crispell were pretextual. As a result, FCA is not entitled to summary judgment on Crispell's retaliation claims.

## IV.   CONCLUSION

For the foregoing reasons, we reverse the district court's decision and remand for further proceedings consistent with this opinion.

**NALBANDIAN, Circuit Judge, dissenting.** Crispell's claims should not survive summary judgment. First, FCA did not interfere with her FMLA rights because her entitlement to leave depended on notice she failed to give. Second, Crispell was not a "qualified individual" under the ADA, and her requested accommodation was unreasonable. Finally, she failed to make a prima facie case of retaliation because she did not show a causal connection between her termination and the exercise of her FMLA rights. And Crispell created no genuine dispute of material fact on any of these claims.

## I.

Crispell's interference claim should not survive summary judgment. Because the "approximate timing" of Crispell's flare-ups was unforeseeable, the notice requirements for her FMLA leave on January 24 and March 24 are governed by 29 C.F.R. § 825.303. *Render v. FCA US, LLC*, 53 F.4th 905, 925 (6th Cir. 2022) (Moore, J., controlling concurrence). So Crispell was required to "comply with [FCA's] usual and customary notice and procedural requirements for requesting leave, *absent unusual circumstances*. 29 C.F.R. § 825.303(c) (emphasis added). This means that, under normal circumstances, FCA requires 30 minutes' notice. And the letter approving Crispell's FMLA leave required Crispell to follow FCA's call-in procedure.

When describing unusual circumstances, the regulation contemplates "emergency medical treatment," and the employee is then "required to follow the call-in procedure [after] his or her condition is stabilized and he or she has access to, and is able to use, a phone." 29 C.F.R. § 825.303(c).[1] The circumstances are unusual, *relative* to those meriting FMLA leave. But here, Crispell explained her tardiness with handwritten letters claiming she was exempt from penalty

---

[1] The preceding section on foreseeable leave also describes unusual circumstances, but its paradigm example of a full voicemail inbox is not relevant here. *See* 29 C.F.R. § 825.302(d).

"due to the nature of" her "covered FMLA illness." And the doctor's note she provided only gave a general description of her flare-ups and how they impact her ability to do her job, with no details excusing her from the standard call-in requirement. By Crispell's own representation, there was nothing to distinguish the circumstances behind these tardies from the exact *usual* circumstance—a standard flare-up, for which her FMLA leave requires a half hour's notice. There was no "emergency requiring leave." 29 C.F.R. § 825.303(c). These were no unusual circumstances.

Thus, FCA is entitled to summary judgment on the interference claim. Crispell failed to give proper notice to her employer, and her entitlement to FMLA leave hinged on that notice. *See Harris v. Metro. Gov't*, 594 F.3d 476, 482 (6th Cir. 2010).

**II.**

Crispell's failure-to-accommodate claims should fail for two independently sufficient reasons: (1) she is not a "qualified individual," *see* 42 U.S.C. § 12111(8) and (2) her requested accommodation is not objectively reasonable, *see Hrdlicka v. Gen. Motors, LLC*, 63 F.4th 555, 570 (6th Cir. 2023).

The burden is on Crispell to show that she was "qualified for her position, with or without reasonable accommodation." *King v. Steward Trumbull Mem'l Hosp., Inc.*, 30 F.4th 551, 560 (6th Cir. 2022). This means showing that she "can perform the essential functions" of her job. § 12111(8). Crispell has not met her burden. Her job as a floater is to cover for other employees. By the nature of that job, reliable attendance is an essential function. *See EEOC v. Ford Motor Co.*, 782 F.3d 753, 762–63 (6th Cir. 2015) (en banc) ("Regular, in-person attendance is an essential function—and a prerequisite to essential functions—of most jobs, especially the interactive ones."). Crispell and the majority opinion both focus on Crispell's attendance rate and *how much* leave she requested. Appellant Br. at 41–42; Maj. Op. at 18. The issue here, however, is not

attendance *rate* but *reliability*. If Crispell needs to use intermittent FMLA leave because of a flare-up, that's completely fine—as long as her employer has enough notice to get another floater to cover her absence. For FCA, that minimal notice is 30 minutes. The *amount* of FMLA leave Crispell takes is immaterial. It is her apparent inability to reliably give her employer 30 minutes' notice before taking it that makes her unqualified for her position.

The burden is not on FCA to rebut. It is Crispell's duty here to show that she *is* qualified. And her only evidence besides her own attendance record was A.D.'s attendance record. Yes, A.D. was also a floater, and he'd also reported late because of a medical condition. But unlike Crispell, A.D. kept his job at FCA because he always called in to give his supervisor at least 30 minutes' notice—just on a private line. Crispell, on the other hand, does not merely wish to call a different number. Instead, she wanted exemption "from that 30-minute rule, and the call-in procedure." R. 52-15, Crispell Dep., p. 16, PageID 1166. She has not met her burden to show any issue of fact to support her argument that she is a "qualified individual."

That alone should resolve the issue in FCA's favor, but, even if Crispell were a qualified individual, her requested accommodation is not objectively reasonable. She "is saddled with the burden of proposing an accommodation and proving that it is reasonable." *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 202 (6th Cir. 2010). The majority says "[r]etroactively granting emergency leave . . . can be a reasonable accommodation," *see* Maj. Op. at 20 (quoting *King*, 30 F.4th at 562–63), but *King* involved an employee whose "particularly severe asthma flare-ups" "landed her in the emergency room," *King*, 30 F.4th at 557. *King* contemplated "*emergency* leave." *Id.* at 562–63 (emphasis added). Crispell claimed no emergency. She offered nothing to distinguish her late call-ins from standard flare-ups.

And even if we don't just take her at her word that she wants a wholesale exemption from the call-in procedure, Crispell, again, presented her circumstances as standard flare-ups. So the 30-minute rule would never apply when Crispell takes FMLA leave and calls in late. Thus, the substance of Crispell's request also amounts to an exemption from her call-in requirement whenever calling in doesn't suit her. And a requirement with such an exception is no requirement at all. Both by her own testimony and taken in context, Crispell's requested accommodation is a general exemption from her call-in requirement. The fact she has voluntarily followed the call-in procedure before does not alter the nature of her present request. *See* Maj. Op. at 19.

It is not reasonable to exempt Crispell from her requirement to give even a half hour's notice before taking FMLA leave. Her job as a floater is to cover for other employees, so this accommodation would deprive FCA of crucial minutes to cover *her* shift because FCA could not rely on Crispell's attendance. This is not reasonable. *See Banks v. Bosch Rexroth Corp.*, 610 F. App'x 519, 528 (6th Cir. 2015) ("[T]he ability to leave work at [the employee's] own discretion on 15 to 30 minutes' notice any time she felt her medicine was not being effective . . . was not objectively reasonable."); *Wheeler v. Jackson Nat'l Life Ins. Co.*, 159 F. Supp. 3d 828, 854 (M.D. Tenn.) ("[A]n accommodation that would allow an employee to simply miss work whenever he felt he needed to and apparently for so long as he felt he needed to as a matter of law is not reasonable on its face." (cleaned up)), *aff'd*, 666 F. App'x 453 (6th Cir. 2016).

Even resolving inferences in Crispell's favor, she has not met her burden to make a prima facie case of failure to accommodate. *See King*, 30 F.4th at 560. Normally, once Crispell requests accommodation, FCA "has a duty to engage in an interactive process to try to determine" if it can accommodate Crispell's disability. *Id.* at 564 (internal quotation marks omitted). But Crispell made no prima facie case, so we need not decide whether there is any "genuine dispute that [FCA] has

engaged in the interactive process in good faith." *Cheatham v. Postmaster Gen.*, No. 20-4091, 2022 WL 1073818, at *9 (6th Cir. Apr. 11, 2022). "[F]ailure to engage in the interactive process is only an independent violation of the ADA if the plaintiff establishes a prima facie showing that he proposed a reasonable accommodation." *Rorrer v. City of Stow*, 743 F.3d 1025, 1041 (6th Cir. 2014).

FCA is entitled to summary judgment on the failure-to-accommodate claim.

**III.**

Crispell's retaliation claim should not survive summary judgment because she failed to make a prima facie case. *See Kirilenko-Ison v. Bd. of Educ.*, 974 F.3d 652, 661 (6th Cir. 2020). Under our precedent, a prima facie case requires Crispell to show "that there was a causal connection between the exercise of her rights under the FMLA and [her termination]." *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006). But she never created a genuine dispute that FCA fired her *because* of her April 2018 EEOC charge.

On September 20, 2018, a train blocked Crispell's way to work, so she arrived three minutes late. And because this was her sixth tardy, it caused her termination. She argues that she should have received a TRAG exception to her late arrival. But the TRAG exception—short for "Tragedy"—was rightly denied. The tragedy exception is meant for large-scale interruptions affecting "a large number of people" (think severe weather), personal tragedies (like a blown tire needing a tow), or technical issues after arrival caused by FCA (like a badge malfunction). R. 52-23, Dortch Dep., p. 8, PageID 1259. Here, Crispell was the only employee delayed, and she did not suffer a tragedy contemplated by the exception. Her tires didn't explode. She didn't need a tow. And no FCA equipment malfunctioned. She was just stuck behind a train.

But perhaps most importantly, the tragedy exception is meant for circumstances that foreclose calling in. *See* R. 52-10, MOU, pp. 2–3, PageID 1098–99 (listing "a severe illness resulting in immediate emergency medical treatment at the same time the employee would otherwise be required to call" and "a car accident on the way to work resulting in a significant injury precluding the ability to call in as required" as the paradigm tragedy exceptions). Yet Crispell admits that she was stopped when the crossing gates went down before a train arrived at 4:30. Her shift didn't start until 5, so she could have called in with 30 minutes' notice but *chose* instead to wait patiently at the tracks for half an hour without even trying to call in. Nothing *precluded* Crispell's "ability to call in as required." *Id.* So the fact that FCA properly denied Crispell's requested tragedy exception does not indicate a causal relationship between her termination and her EEOC charge.

Crispell also points to her assertion that an unnamed "they" would not let Jones excuse her tardiness after he had said he "would take care of it." Appellant Br. at 45–46 (emphasis omitted). But Crispell having a confident advocate at work does not entail "FCA's 'failure to follow' its typical disciplinary procedures" whenever he fails. Maj. Op. at 23 (quoting *Bailey v. Oakwood Healthcare, Inc.*, 732 F. App'x 360, 365 (6th Cir. 2018)). To survive summary judgment, "significant probative evidence must be presented to support the complaint." *Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir. 1991). And this doesn't make the cut.

Finally, Crispell claims that FCA supervisors could cover tardies with PERE time even without notice and even if an employee were previously suspended, even though the FCA–UAW Letter of Understanding limits it to employees with fewer than four tardies. This claim is disputed, but at the summary judgment stage, we credit it. That said, even if supervisors *could* cover tardies

with PERE time but elected not to when Crispell was stuck behind a train, that would not show a *causal connection* to the EEOC charge she made five months earlier.

This EEOC charge is not the only thing that distinguishes her from her peers. First, Crispell was already on her last chance. Second, she'd already gotten a late start before. Third, FCA had already once terminated her for absenteeism, gave her another chance, issued a "final written warning" for six more unexcused absences, and then took "corrective action" for another five attendance issues before Crispell finally accumulated the six tardies that led to this termination. On the record, a reasonable person would not find a genuine dispute that Crispell was fired *because of* her EEOC charge.

For these reasons, I respectfully dissent.